# United States Court of Appeals
## For the First Circuit

No. 04-2402

UNITED STATES OF AMERICA,

Appellee,

v.

ORLANDO ORTIZ-CINTRÓN,

Defendant, Appellant.

_____

No. 04-2403

UNITED STATES OF AMERICA,

Appellee,

v.

FRANCISCO ORTIZ-ZAYAS,

Defendant, Appellant.

_____

No. 04-2404

UNITED STATES OF AMERICA,

Appellee,

v.

HILDA N. CINTRÓN-RAMOS, a/k/a Maititi,

Defendant, Appellant.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, <u>Chief Judge</u>,

Torruella and Dyk,[*] <u>Circuit Judges</u>.

_____

    <u>Rafael Anglada-López</u>, by appointment of the court, on brief for appellant Orlando Ortiz-Cintrón.
    <u>Marlene Aponte-Cabrera</u>, by appointment of the court, for appellant Francisco Ortiz-Zayas.
    <u>Luis A. Guzmán</u>, by appointment of the court, for appellant Hilda N. Cintrón-Ramos.
    <u>Thomas F. Klumper</u>, Assistant United States Attorney, with whom <u>H.S. García</u>, United States Attorney, and <u>Nelson Pérez-Sosa</u>, Assistant United States Attorney, Senior Appellate Attorney In Charge, were on brief for appellee.

August 25, 2006

_____

[*]Of the Federal Circuit, sitting by designation.

**BOUDIN**, **Circuit Judge**.  Orlando Ortiz-Cintrón and his parents, Francisco Ortiz-Zayas and Hilda Cintrón-Ramos, pled guilty in the summer of 2003 to conspiracy to possess cocaine and cocaine base with the intent to distribute, 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846 (2000), and certain of their property was ordered forfeited pursuant to 21 U.S.C. § 853 (2000).  The defendants appeal, contesting the forfeitures and, in the case of Ortiz-Zayas, the guilty plea as well.

It appears that the leading participants in the conspiracy were Ortiz-Cintrón and his two brothers and that other family members, including the parents, were involved in lesser roles.  Carmen Cruz-Aviles, married to one of the sons, pled guilty and gave testimony at the forfeiture hearing about the scope and operation of the conspiracy, which was conducted from more than one location over an extensive period of time.

We begin with the forfeitures.  Under section 853, which governs criminal forfeiture in drug cases, the convicted defendant forfeits  "any property . . . derived from[] any proceeds the person obtained, directly or indirectly, as the result of such violation [of the drug laws]; [and] . . . any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation . . . ."

The guilty plea agreements left the matter of forfeiture to be determined by the district judge.  The judge held hearings in

-3-

December 2003, heard evidence and ordered forfeiture of two properties located in Aibonito, Puerto Rico: "Bella Vista," owned by Ortiz-Cintrón and his wife, Ivelisse Figueroa-Chacon, on the ground that it had been used for drug activities and purchased with drug proceeds, and "San Luis," belonging to Ortiz-Zayas and Cintrón-Ramos, as having been used for drug activities.

On this appeal, Ortiz-Cintrón claims that the evidence did not establish a sufficient connection between Bella Vista and the offense. His mother, Cintrón-Ramos, argues that she and her husband were ignorant of any use of San Luis in connection with drug dealing. The district court's findings were made by a preponderance of the evidence;[1] our review of such findings are for clear error, United States v. Iacaboni, 363 F.3d 1, 7 (1st Cir.), cert. denied 543 U.S. 978 (2004).

Bella Vista was the residence of Ortiz-Cintrón and his wife (who also pled guilty to drug charges). At the forfeiture hearing, the government offered testimony of DEA Special Agent Melendez and cooperating defendant Cruz-Aviles, together with recordings of telephone calls, to show that members of the drug conspiracy co-headed by Ortiz-Cintrón used the property both to

---

[1]Although the forfeiture occurs in a criminal proceeding incident to the defendant's conviction, the statute makes the forfeiture an aspect of the penalty. 21 U.S.C. § 853(a); see Libretti v. United States, 516 U.S. 29, 39 (1995); United States v. Keene, 341 F.3d 78, 85-86 (1st Cir. 2003).

package drugs and store drug money and for telephone calls relating to the drug conspiracy.

Ortiz-Cintrón's brief offers no colorable reason why this showing was insufficient to support a finding that the property had been used to facilitate drug dealing. There was some impeachment of the government witnesses and several of the telephone calls were cryptic; but the government offered first-hand testimony of use of the property by the conspirators for drug activities, and the district judge was fully entitled to credit the witnesses. United States v. Saccoccia, 58 F.3d 754, 774 (1st Cir. 1995), cert. denied, 517 U.S. 1105 (1996).

The district court made an alternative finding that Bella Vista had been purchased with drug proceeds, relying in part on testimony from Cruz-Aviles that Ortiz-Cintrón had paid $90,000 in cash for the property. See 21 U.S.C. § 853(d) (rebuttable presumption). This testimony contradicts statements in the property deed as to amounts paid, and Ortiz-Cintrón claims that the finding therefore fails to give full faith and credit to public records. See, e.g., 28 U.S.C. §§ 1738-39 (2000).

It is not clear that the district court would be bound to treat as conclusive the recitations in a property deed. Nor is it likely that the discrepancy in amount between the testimony and the deed mattered to the result (Ortiz-Cintrón reported no legitimate income in the period of the purchase). Anyway, given the use of

the property for drug dealing, the alternative ground for forfeiture based on proceeds need not be considered.

The forfeiture of the San Luis property--the residence of Cintrón-Ramos and Ortiz-Zayas--is more complicated. Despite Cintrón-Ramos' claim to the contrary, the finding that the property was used by the conspiracy was supported. Agent Melendez testified that San Luis was used to store and package drugs and that drug-related telephone calls were made to the property, including a call to the property by Cintrón-Ramos herself. The agent also testified that Cintrón-Ramos' husband had admitted to seeing others packaging drugs at the property.

Cintrón-Ramos argues that the agent did not have personal knowledge of packaging on the premises but relied only upon inferences (e.g., from telephone calls)--a claim to which the government does not trouble to respond. But Cruz-Aviles gave corroborating testimony, saying that the property was used for packaging, and the district judge was entitled to credit her testimony (and draw inferences as well from the evidence of phone calls).

Cintrón-Ramos' more interesting claim is that she and her husband worked long hours every day at a family business located elsewhere and had no personal knowledge that the conspiracy used San Luis for drug activities. The guilty pleas of Cintrón-Ramos and her husband established that they were members of the

conspiracy but the evidence also showed that the house was commonly left open during the day so family members could visit Ortiz-Zayas' elderly mother who lived at the house.

This argument is not seriously developed on appeal: there are only a few brief references to the point in Cintrón-Ramos' brief, none in her husband's brief, no discussion of the relevant law, and none about the government's evidence--limited though it may have been--suggesting personal knowledge by her and her husband pertaining to the use of the house for drug related activities.

This may explain, although it does not excuse, the government's failure to address seriously what, if adequately developed, might be Cintrón-Ramos' most legally promising and factually sympathetic argument.  The district judge made no specific finding as to the parents' knowledge of the use of their property or whether the use of it for drug activity was foreseeable (although defendants' argument in the district court may not have been framed in these terms).

Nothing in our case law says that personal knowledge of the property's use is required where the defendant is guilty of the offense; some decisions suggest that, at most, the use of the property must be foreseeable.[2]  The government says tersely that

---

[2]<u>United States</u> v. <u>Colon-Solis</u>, 354 F.3d 101, 103 (1st Cir. 2004); <u>United States</u> v. <u>White</u>, 116 F.3d 948, 951-52 (1st Cir. 1997); <u>United States</u> v. <u>Hurley</u>, 63 F.3d 1, 22 (1st Cir. 1995), <u>cert. denied sub nom</u>, 517 U.S. 1105 (1996); <u>United States</u> v. <u>McHan</u>, 101 F.3d 1027, 1043 (4th Cir. 1996), <u>cert. denied</u>, 520 U.S. 1281

the statute by its terms requires only that the defendant must be guilty of drug dealing and that the property be used to facilitate the offense.  Neither side attempts to establish, through case law or argument, their respective legal positions--a problem ordinarily fatal to an appellant seeking to overturn a result.

We have latitude, rarely indulged, to notice an error not seriously developed on the appeal.  For this, there is no mechanical test, such as the plain error formula used where a claim was not properly preserved in the district court but is at least adequately developed in the appellant's brief on appeal.  <u>Cf.</u> <u>United States</u> v. <u>Olano</u>, 507 U.S. 725, 732-37 (1993).  Where the latter condition is not met, the argument against review is even stronger.

The question what legal rule should apply is debatable and not briefed. Even an intermediate standard such as foreseeability--probably the best Cintrón-Ramos could expect--would be unlikely to produce an outcome in her favor: there is some evidence of actual knowledge by her and her husband.  Even without that, a finding of foreseeability on remand would be easy and perhaps likely, if not compelled.

Several other arguments against the forfeiture are adequately developed but they are without merit.  Both parents

_____

(1997); <u>United States</u> v. <u>Benevento</u>, 836 F.2d 129, 130 (2d Cir. 1988) (per curiam).  <u>See also</u> U.S.S.G. §1B1.3(a)(1)(B).

argue that the forfeiture is an excessive fine in violation of the Eighth Amendment. The question is whether the fine is "grossly disproportional to the gravity of a defendant's offense." United States v. Bajakajian, 524 U.S. 321, 334 (1998). Our review is de novo, with deference given to the district court's factual findings. Id. at 336 & n.10.

Judged by the criteria used in the case law, this is not even arguably an excessive fine. Bajakajian, 524 U.S. at 337-40; United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005). The parents' equity in the house is about $33,000; the parents both pled to drug dealing in amounts that could easily have produced a much larger fine;[3] and the house was used to facilitate drug dealing, regarded by Congress as a very serious crime with a comparably expansive forfeiture statute.

The parents argue that the wholesale value of the drugs to which they directly admitted was less than their equity in the house. No cited authority treats that as the ceiling for a lawful fine, nor can the parents plausibly have believed that the conspiracy was limited to what they personally admitted. As for the claim of hardship, the Attorney General may choose to remit a forfeiture on that ground but that is up to him. See 19 U.S.C. § 1618, 21 U.S.C. § 853(j), 21 U.S.C. § 881(d).

_____

[3]The statute and sentencing guidelines authorize a maximum fine of $1 million for each defendant. 21 U.S.C. § 841(b)(1)(C); U.S.S.G. §5E1.2(c)(4) (2002).

Ortiz-Zayas says that he was entitled to a jury trial on the forfeiture issue under the Sixth Amendment, as construed in Apprendi v. New Jersey, 530 U.S. 466 (2000), and Blakely v. Washington, 542 U.S. 296 (2004). In the district court, he agreed expressly to have the issue decided by the judge. Even without waiver, we would be bound--unless and until it is overruled by the Supreme Court--by Libretti, 516 U.S. at 49, holding that the Sixth Amendment does not apply to "criminal forfeiture as an aspect of sentencing."

Finally, shifting attention from the forfeiture to the guilty plea itself, Ortiz-Zayas says that the district court erred in accepting his plea. Because Ortiz-Zayas did not move in the district court to withdraw his guilty plea, we review for plain error. United States v. Cruz-Rivera, 357 F.3d 10, 12 (1st Cir. 2004). In this case, there was no error at all.

Ortiz-Zayas agrees that his original plea may have been properly conducted; he explicitly pled guilty to participating in the conspiracy after the ordinary colloquy. But, he says, later evidence developed in connection with the sentencing and forfeiture showed that his only tie to the conspiracy was a failure to report his sons to the police after learning that they were engaged in drug dealing. This recitation does not square with the facts.

Ortiz-Zayas' plea agreement concedes that he participated in several specific phone calls relating to drug activities and the

pre-sentence report describes him not merely as keeping silent but as admitting to the probation officer that he advised his sons when the police were around.  We have no reason to think that his guilty plea was unsupported.

Affirmed.