# United States Court of Appeals
## For the First Circuit

No. 05-1126

UNITED STATES OF AMERICA,

Appellee,

v.

OTILIO JOSE,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Lynch and Howard, Circuit Judges,
and Young,[*] District Judge.

Mauricio Hernández Arroyo, with whom Law Offices of Mauricio Hernández Arroyo was on brief, for appellant.
Aramis G. Ríos, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, Nelson Pérez-Sosa, Assistant United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellee.

August 17, 2007

[*]    Of the District of Massachusetts, sitting by designation.

**LYNCH**, **Circuit Judge**.  This case presents our first occasion to address the bulk cash smuggling provisions of the 2001 USA PATRIOT Act, Pub. L. No. 107-56, § 371, 115 Stat. 272, 336-38 (codified as amended at 31 U.S.C. § 5332).  Defendant Otilio Jose challenges the district court's forfeiture order in the amount of $114,948, arguing that it constitutes an excessive fine in violation of the Eighth Amendment.  He does not challenge his straight guilty plea to counts arising from his failure to declare the amount of currency he was attempting to take with him out of the country.  We hold that the forfeiture order does not constitute an excessive fine, but remand, at the request of the United States, so that the sum of $1,400 can be deducted from the amount of forfeiture.

I.

On August 23, 2004, Jose checked two pieces of luggage on a flight departing from Luis Muñoz Marín International Airport in Puerto Rico.  Jose was on his way to St. Maarten, Netherlands Antilles.  Customs officers inspected Jose's checked luggage and discovered bundles of cash wrapped in tissue paper hidden in a pair of sneakers and other bundles wrapped in carbon paper hidden inside a set of bed sheets.  The officers approached Jose and explained to him the currency reporting requirements for transported amounts in excess of $10,000.  See 31 U.S.C. § 5316(a)(1)(A).  Jose declared verbally and in writing that he was in possession of $1,400.  In

-2-

fact, the cash on Jose, and in his luggage, amounted to a hefty $114,948. Jose explained that he had found the money while visiting Puerto Rico. He said that he was at a San Juan hotel when he saw someone throw something into a trash container; that individual looked around to see if anyone had seen him and then left the area. Jose went down to the trash and picked up a bag which contained a large amount of money. He said to himself, "This is my fortune, I found it. I put it in my bag and I go home." He claimed that he was unaware of any reporting requirements.

Jose was arrested on August 23 and later charged in an indictment with (1) knowingly and willfully failing to file a report when he was about to transport at one time monetary instruments of more than $10,000 from a place in the United States to a place outside the United States, in violation of 31 U.S.C. § 5316(a)(1)(A) (the "cash reporting requirement"); (2) making a materially false, fictitious, or fraudulent statement or representation in a matter within the jurisdiction of the Department of Homeland Security, an agency of the United States, in violation of 18 U.S.C. § 1001(a); and (3) knowingly and willfully concealing more than $10,000 in currency in an attempt to transport such currency from a place in the United States to a place outside the United States without filing a report as required by the Secretary of the Treasury, in violation of 31 U.S.C. § 5332(a) (the "bulk cash smuggling statute"). The indictment also included

allegations seeking forfeiture of the $114,948 based on the offenses alleged in Counts One and Three, pursuant to 31 U.S.C. § 5317(c)(1)(A) and 31 U.S.C. § 5332(b)(2), respectively.

On November 4, 2004, Jose entered a straight guilty plea to all three counts of the indictment. The district court advised defendant of his rights and found that he had knowingly and voluntarily waived them by pleading guilty. The court also explained to Jose that by pleading guilty he could expect the government to proceed to forfeit the money involved in the offense as a result of the violations of the cash reporting requirement and the bulk cash smuggling statute. Jose agreed except for the $1,400 he did declare, which he expected to be allowed to keep. The government clarified that it had already filed administrative proceedings to try to return the $1,400 to defendant. The government sought forfeiture of the remaining funds, which Jose had attempted to smuggle, but nothing more than that.

On December 13, 2004, the government requested a preliminary order of forfeiture for the entire amount of $114,948. The government's motion cited both sections 5317(c)(1)(A) (the cash reporting requirement) and 5332(b)(2) (the bulk cash smuggling statute) as authority for the forfeiture. It attached a proposed order which referenced defendant's violation of sections 5316(a)(1)(A) and 5322. The citation to section 5322, rather than section 5332, clearly was a typographical error. The government's

forfeiture argument at the sentencing hearing was based on both the cash reporting requirement and the bulk cash smuggling statute.

At the hearing on December 14, 2004, the district court stated that it was not so naive as to believe defendant's story about how he came to possess the $114,948. The judge found that Jose had attempted to mislead the court, and he sentenced Jose to 18 months' imprisonment on each count, to be served concurrently. Jose also received three years of supervised release and was ordered to pay a special monetary assessment of $100 on each count. In light of defendant's financial situation, the court did not impose a fine. Judgment entered on December 14, 2004; no forfeiture order was included in the judgment, as provided for under Fed. R. Crim. P. 32.2(b)(3).

On December 20, 2004, the government filed a motion to amend the judgment, calling the district court's attention to the fact that the judgment did not include a forfeiture order and to the outstanding issue concerning the $1,400 that Jose had declared. On December 23, 2004, the district court adopted the government's earlier proposed order (with its typographical error) and issued a preliminary order of forfeiture as to the entire amount of $114,948. The court did not amend its earlier judgment to include the forfeiture order.

In December 2005, defendant's appellate counsel filed a brief pursuant to <u>Anders</u> v. <u>California</u>, 386 U.S. 738 (1967),

asserting that there were no non-frivolous issues for appeal. On March 21, 2006, this court rejected the Anders brief, but granted counsel's request to withdraw. We ordered appointment of new counsel and requested briefing on (1) whether the district court erred in failing to conform with Fed. R. Crim. P. 32.2, (2) whether the district court erred in failing to resolve a contested issue regarding the amount of forfeiture, and (3) whether the forfeiture order violates the Eighth Amendment's prohibition of excessive fines. Present counsel for defendant has submitted a merits brief only as to the third issue outlined in our March 21 order. Accordingly, the first and second issues have been waived. See United States v. Vigneau, 337 F.3d 62, 68 n.1 (1st Cir. 2003); United States v. Chapdelaine, 23 F.3d 11, 13 (1st Cir. 1994). We consider only whether the district court's forfeiture order constitutes an excessive fine in violation of the Eighth Amendment.

## II.

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. We review de novo whether a fine is constitutionally excessive, but give due deference to the district court's factual findings. United States v. Ortiz-Cintrón, 461 F.3d 78, 81 (1st Cir. 2006). On appeal from a forfeiture order alleged to be an excessive fine, it is the defendant's burden to show unconstitutionality. See id. at 81-82;

United States v. Heldeman, 402 F.3d 220, 223 (1st Cir. 2005).
Here, we review the forfeiture order only for plain error because
Jose did not raise his Eighth Amendment claim before the district
court.[1]  See United States v. Beras, 183 F.3d 22, 28 (1st Cir.
1999).  "To establish plain error, a defendant must demonstrate
that: (1) there was error; (2) the error was plain; (3) the error
affected the defendant's substantial rights; and (4) the error
adversely impacted the fairness, integrity, or public reputation of
judicial proceedings."  United States v. Riggs, 287 F.3d 221, 224
(1st Cir. 2002) (citing United States v. Olano, 507 U.S. 725,
732-36 (1993); United States v. Saxena, 229 F.3d 1, 5 (1st Cir.
2000)).

Jose's argument relies heavily on the Supreme Court's
decision in United States v. Bajakajian, 524 U.S. 321 (1998).  In
Bajakajian, the defendant and his family had failed to report the
$357,144 in cash they were attempting to take with them out of the
United States on June 9, 1994.  Id. at 324-25.  The defendant pled
guilty to a charge of violating 31 U.S.C. § 5316(a)(1)(A) and
elected to have a bench trial on the forfeiture count brought under

---

[1]    Jose argues that his objection at the sentencing hearing
to the forfeiture of the declared $1,400 suffices to merit de novo
review on appeal.  This argument fails, as defendant never objected
to the forfeiture on Eighth Amendment grounds before the district
court.

18 U.S.C. § 982(a)(1).[2]  Id. at 325.  The district court found that, under section 982(a)(1), the entire $357,144 was forfeitable because it was "involved in" the offense.  Id. at 325-26. Nonetheless, the court ordered the forfeiture of only $15,000, believing that full forfeiture would violate the Excessive Fines Clause.  Id. at 326.  On the government's appeal, the Ninth Circuit held that forfeiture of currency pursuant to 18 U.S.C. § 982(a)(1) was per se unconstitutional because unreported currency was not an "instrumentality" of the crime of failure to report.  United States v. Bajakajian, 84 F.3d 334, 336-38 (9th Cir. 1996).

On certiorari, the Supreme Court held that it was irrelevant whether Bajakajian's money was an instrumentality of his offense.  524 U.S. at 333.  Instead, the Court asked first whether the forfeiture constituted punishment and was thus a "fine" within the meaning of the Excessive Fines Clause, id. at 327-28, and then considered whether the forfeiture was constitutionally excessive -- that is, whether the forfeiture was "grossly disproportional to the gravity of the defendant's offense," id. at 337.  The Court held that the forfeiture of Bajakajian's money, which was "imposed at the culmination of a criminal proceeding and require[d] conviction

---

2    At the time, 18 U.S.C. § 982(a)(1) provided: "The court, in imposing sentence on a person convicted of an offense in violation of section . . . 5316, . . . shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property."  18 U.S.C. § 982(a)(1) (1994); see also Bajakajian, 524 U.S. at 325.

-8-

of an underlying felony," constituted punishment and was thus a "fine." Id. at 328. On the question of excessiveness, the Court thought it was significant that the district court had found that Bajakajian's offense was unrelated to any other illegal activities. Id. at 337-38. Bajakajian "owed no customs duties to the Government, and it was perfectly legal for him to possess the $357,144 in cash and to remove it from the United States. His crime was simply failing to report the wholly legal act of transporting his currency." Id. at 338 n.13. The Court further considered the maximum penalties available under the statute, as well as the fact that under the Sentencing Guidelines "the maximum sentence that could have been imposed on [Bajakajian] was six months, while the maximum fine was $5,000." Id. at 338-39 & n.14. The Court also found that "[t]he harm that [Bajakajian] caused was . . . minimal." Id. at 339. These observations contributed to the Court's conclusion that the full forfeiture of Bajakajian's money "would be grossly disproportional to the gravity of his offense." Id. at 339-40.

Congress responded to Bajakajian in the USA PATRIOT Act when it amended laws governing civil and criminal forfeiture in the wake of September 11, 2001. Pub. L. No. 107-56, §§ 319, 371, 372, 115 Stat. at 311-12, 336-39 (amending 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 31 U.S.C. § 5317, and creating 31 U.S.C.

§ 5332).[3]   The USA PATRIOT Act inserted a criminal forfeiture provision in 31 U.S.C. § 5317(c)(1)(A) for property involved in a violation of 31 U.S.C. § 5316 and correspondingly deleted the reference to 31 U.S.C. § 5316 in 18 U.S.C. § 982(a)(1).[4]   Id. § 372, 115 Stat. at 338-39.

The Act also defined the new crime of "bulk cash smuggling" at 31 U.S.C. § 5332.   Id. § 371, 115 Stat. at 337-38. Section 5332(a)(1) provides:

> Whoever, with the intent to evade a currency reporting requirement under section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage, merchandise, or other container, and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States, or from a place outside the United States to a place within the United States, shall be guilty of a currency smuggling offense and subject to punishment pursuant to subsection (b).

Section 5332(b)(2), in turn, provides for the forfeiture of "any property, real or personal," involved in the violation of section 5332(a)(1).

---

[3]   For a discussion of the USA PATRIOT Act's civil forfeiture provisions for interbank accounts, see United States v. Union Bank for Savings & Investment, 487 F.3d 8 (1st Cir. 2007) (interpreting 18 U.S.C. § 981(k)).

[4]   31 U.S.C. § 5317(c)(1)(A) and the superseded version of 18 U.S.C. § 982(a)(1) are virtually identical. Compare 31 U.S.C. § 5317(c)(1)(A), with 18 U.S.C. § 982(a)(1) (1994).

Although the elements of the offense defined at section 5332(a)(1) largely track those of the offense defined at section 5316(a)(1),[5] section 5332 places its emphasis on the <u>knowing concealment</u> of "more than $10,000 in currency or other monetary instruments," rather than the <u>requirement to file a report</u>, as in section 5316.  Indeed, Congress attached to section 5332 a note expressing its finding that

> [t]he current penalties for violations of the currency reporting requirements are insufficient to provide a deterrent to the laundering of criminal proceeds.  In particular, in cases where the only criminal violation under current law is a <u>reporting offense</u>, the law does not adequately provide for the confiscation of smuggled currency. <u>In contrast, if the smuggling of bulk cash were itself an offense, the cash could be confiscated as the corpus delicti of the smuggling offense.</u>

---

[5]     Section 5316 provides in relevant part:

(a) Except as provided in subsection (c) of this section, a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly --

 (1) transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time --

  (A) from a place in the United States to or through a place outside the United States; or

  (B) to a place in the United States from or through a place outside the United States . . . .

-11-

USA PATRIOT Act, Pub. L. No. 107-56, § 371(a)(6), 115 Stat. at 337 (emphases added).

Congress was explicit that its purposes in enacting section 5332 were "(1) to make the act of smuggling bulk cash itself a criminal offense; (2) to authorize forfeiture of any cash or instruments of the smuggling offense; and (3) to emphasize the seriousness of the act of bulk cash smuggling." Id. § 371(b), 115 Stat. at 337. Congress was particularly concerned that the transportation and smuggling of large sums of cash was a "warning sign[] of drug trafficking, terrorism, money laundering, racketeering, tax evasion and similar crimes." Id. § 371(a)(3), 115 Stat. at 337. Further, because couriers who attempt to smuggle cash out of the country are typically low-level employees of criminal organizations, Congress believed that "only the confiscation of the smuggled bulk cash can effectively break the cycle of criminal activity of which the laundering of the bulk cash is a critical part." Id. § 371(a)(5), 115 Stat. at 337.

Congress, in enacting section 5332, responded to Bajakajian in a way that it believed would, in most circumstances, constitutionally permit the full forfeiture of currency not reported to authorities as required by section 5316. The Report of the House Committee on Financial Services stated:

> The Committee believes . . . that bulk cash smuggling is an inherently more serious offense than simply failing to file a Customs report. Because the constitutionality of a

-12-

> forfeiture is dependent on the "gravity of the offense" under Bajakajian, it is anticipated that the full forfeiture of smuggled money will withstand constitutional scrutiny in most cases.

H.R. Rep. No. 107-250, at 53 (2001). Section 5332 makes clear that Congress has now prohibited what it calls "bulk cash smuggling," and that it considers this to be a very serious offense. Congress has thus tipped the forfeiture equation in favor of the prosecution in bulk cash smuggling cases. Bajakajian itself stated that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature." 524 U.S. at 336 (citing Solem v. Helm, 463 U.S. 277, 290 (1983) ("Reviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes . . . ."); Gore v. United States, 357 U.S. 386, 393 (1958) ("Whatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy.")). But see United States v. Ely, 468 F.3d 399, 402 n.2 (6th Cir. 2006) (stating that the difference between the superseded version of 18 U.S.C. § 982 and 31 U.S.C. § 5332 "[could not] be viewed as a meaningful change").

We turn to the question of whether the district court's forfeiture order was plainly erroneous, given defendant's challenge under the Excessive Fines Clause. In considering this question, we need not, and do not, address whether Congress, in enacting section

-13-

5332, has eliminated in all instances any Eighth Amendment concerns with respect to bulk cash smuggling forfeitures. In light of the facts of this case, we conclude that there was no error at all, much less plain error.

We consider first whether the forfeiture order constituted punishment. See Heldeman, 402 F.3d at 223 ("Forfeitures are subject to the Eighth Amendment's excessive fines clause 'if they constitute punishment for an offense.'" (quoting Bajakajian, 524 U.S. at 328)). The order here, which was "imposed at the culmination of a criminal proceeding," and which "require[d] conviction of an underlying felony," constituted punishment.[6] Bajakajian, 524 U.S. at 328.

Next, we consider whether the forfeiture of the $114,948 would be "grossly disproportional to the gravity of the defendant's offense." Id. at 337. For Eighth Amendment excessive fine purposes, pertinent factors include: "(1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the

---

[6] The government has not argued on appeal that the forfeiture is merely a remedial customs remedy that does not constitute punishment subject to the Excessive Fines Clause. See One Lot Emerald Cut Stones v. United States, 409 U.S. 232, 237 (1972) (per curiam) (holding that customs statute requiring forfeiture of undeclared goods concealed in baggage and imposing a monetary penalty equal to value of goods imposed "remedial rather than punitive sanctions"). But see Bajakajian, 524 U.S. at 340-41 (distinguishing between punishment for criminal offenses and civil in rem forfeitures of goods imported in violation of customs laws).

legislature (or the Sentencing Commission); and (3) the harm caused by the defendant." Heldeman, 402 F.3d at 223; see also Bajakajian, 524 U.S. at 337-40; Beras, 183 F.3d at 29.

On the first factor, we inquire whether the statute is principally directed toward defendant. Given that we take the forfeiture order to be independently based on Count Three, we consider whether section 5332, the bulk cash smuggling statute, is designed for offenders like Jose. In its USA PATRIOT Act findings, Congress recognized that "couriers who attempt to smuggle . . . cash out of the United States are typically low-level employees of large criminal organizations." Pub. L. No. 107-56, § 371(a)(5), 115 Stat. at 337 (emphasis added). Here, the district court did not find that defendant's funds were not linked to other crimes, as was the case in Bajakajian. See 524 U.S. at 326. Although it is true that the district court did not expressly find that the funds were related to illegal activities,[7] it is Jose who bears the burden of showing that the forfeiture is unconstitutional. See Ortiz-Cintrón, 461 F.3d at 81-82; Heldeman, 402 F.3d at 223.

---

[7] After the district court announced Jose's sentence, defense counsel characterized the court as having found that the funds were "related to a drug offense." The judge responded:

> I didn't say that at any moment. . . . I said that [Jose's] story . . . as to how he came about the money is hard to believe. And I am not so naive as to think that somebody would throw away $114,948 in a trash can. That is all I said. I didn't use anything about drugs, Counselor.

-15-

Indeed, defendant's far-fetched story explaining how he found the money raises serious suspicions about whether the funds were legally derived. Forfeitures based on violations of the bulk cash smuggling statute are principally directed toward money launderers, drug traffickers, tax evaders, and terrorists, as well as their couriers. See USA PATRIOT Act, Pub. L. No. 107-56, § 371(a)(3), (5), 115 Stat. at 337. Given the facts of this case and Jose's unlikely story, we cannot say that section 5332 is not principally designed for persons such as defendant.

Turning to the second factor, Jose, like Bajakajian, faced a statutory maximum of 5 years' imprisonment. See 31 U.S.C. §§ 5322(a), 5332(b)(1); Bajakajian, 524 U.S. at 339 n.14. Jose, however, faced a tougher Guidelines sentence than Bajakajian. The maximum Guidelines sentence that could have been imposed on Jose was 18 months' imprisonment and a fine of $30,000, whereas the maximum Guidelines sentence that could have been imposed on Bajakajian was 6 months' imprisonment and a fine of only $5,000. Thus, the forfeiture at issue here is less than 4 times the maximum fine allowable under the Guidelines, whereas the forfeiture in Bajakajian exceeded the maximum fine under the then-mandatory Guidelines by a factor of more than 70. This undermines Jose's argument that the forfeiture order is grossly out of proportion to the gravity of his offense. See Beras, 183 F.3d at 29 n.5 (noting that Bajakajian "suggests that the maximum penalties provided under

the Guidelines should be given greater weight than the statute because the Guidelines take into consideration the culpability of the individual defendant").

The third factor requires us to evaluate the harm caused by defendant. We consider the harm caused by Jose's violation of section 5332, the bulk cash smuggling statute. As Congress stated in its enactment of the USA PATRIOT Act, it wanted to "emphasize the seriousness of the act of bulk cash smuggling." Pub. L. No. 107-56, § 371(b), 115 Stat. at 337. Further, Congress found a link between the laundering of bulk cash and various types of serious criminal activity. See id. § 371(a)(3), 115 Stat. at 337. It expressly tied the enforcement of section 5332 to efforts to "break the cycle of criminal activity of which the laundering of the bulk cash is a critical part." Id. § 371(a)(5), 115 Stat. at 337. We adhere to Congress's view that defendant's violation of the bulk cash smuggling statute constitutes a significant harm. Compare Bajakajian, 524 U.S. at 339 ("Failure to report [Bajakajian's] currency affected only one party, the Government, and in a relatively minor way. . . . Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.").

Thus far we have concluded: (1) defendant's funds may well have been linked to other criminal activities, (2) the amount of forfeiture is not grossly out of line with the maximum fine

-17-

authorized by the Sentencing Guidelines, and (3) Congress has clearly expressed its belief that bulk cash smuggling is a serious offense linked to various kinds of harm. The consideration of a fourth factor makes abundantly clear that there was no error here.[8]

The Supreme Court noted in Bajakajian that the Excessive Fines Clause was taken from the English Bill of Rights of 1689. 524 U.S. at 335; see also Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc., 492 U.S. 257, 266-67 (1989). The English Bill of Rights of 1689 was passed in response to the subversion of Magna Charta by Stuart judges who imposed excessive fines. Bajakajian, 524 U.S. at 335. Magna Charta, in turn, required that "amercements (the medieval predecessors of fines) should be proportioned to the offense and that they should not deprive a wrongdoer of his livelihood." Id. (emphasis added); see also id. at 335-36 ("'A Free-man shall not be amerced for a small fault, but after the manner of the fault; and for a great fault after the greatness thereof, saving to him his contenement; (2) and a Merchant likewise, saving to him his merchandise; (3) and any other's villain than ours shall be likewise amerced, saving his wainage.'" (quoting Magna Charta, 9 Hen. III, ch. 14 (1225), 1 Stat. at Large 6-7 (1762 ed.))). Given the history behind the Excessive Fines Clause, it is appropriate to consider whether the

---

[8] Even if we were measuring forfeiture by section 5316, the cash reporting requirement, we would still find no violation of the Excessive Fines Clause.

forfeiture in question would deprive Jose of his livelihood. Cf. Bajakajian, 524 U.S. at 339-40 & n.15 (concluding that the full forfeiture sought by the government would be grossly disproportional to the gravity of defendant's offense, but noting that defendant did not present any arguments regarding wealth, income, or deprivation of livelihood).

It cannot reasonably be argued that forfeiture of the $114,948 would deprive defendant of his livelihood. As the district court noted at sentencing, "according to [Jose's] own words, th[e] money wasn't his to start with. . . . So whether the government forfeits it or not, it is really of no consequence to him because it wasn't his to be forfeited." The money, by defendant's own admission, was not related to efforts to maintain his livelihood. Further, at the change of plea hearing, the government indicated that Jose's business merchandise, which was taken from him in Puerto Rico, was in the process of being sent to his wife in St. Maarten so that she could resell the goods there, in accordance with Jose's business practice. We conclude that the forfeiture order does not implicate the historical concerns underlying the Excessive Fines Clause.

For the foregoing reasons, we hold that defendant has failed to show that there was error, much less error that was plain. The amount of forfeiture simply is not "grossly

disproportional to the gravity of the defendant's offense."  Id. at 337.

The government has requested a limited remand so that it can pursue its intention, stated at the change of plea hearing, to return to defendant the $1,400 he declared.  The government plans to move to amend the district court's order to reflect the remaining balance of $113,548.  We remand for this limited purpose. In all other respects, we affirm the district court's forfeiture order.