# United States Court of Appeals
## For the First Circuit

Nos. 09-1094
     09-1132

UNITED STATES OF AMERICA,

Appellee/Cross-Appellant,

v.

RAYMOND FOGG, a/k/a ROCKY,

Defendant, Appellant/Cross-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. John A. Woodcock, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Lipez and Howard, Circuit Judges.

Peter E. Rodway, with whom Rodway & Horodyski, P.A. was on brief, for appellant.
Renée M. Bunker, Assistant United States Attorney, with whom Paula D. Silsby, United States Attorney, was on brief, for appellee.

December 1, 2011

**HOWARD, Circuit Judge**. Raymond Fogg, Jr. appeals his convictions for conspiracy to possess with intent to distribute marijuana and for social security fraud,[1] claiming that the district court erred by admitting several hearsay statements. The government cross-appeals the district court's decision not to impose a forfeiture order. That decision was based on a finding of Fogg's inability to pay. We affirm appellant's conviction. We reverse the court's decision to decline to issue a final order of forfeiture and remand for entry of that order.

## I. Background

Fogg's conviction was based on his participation in a conspiracy to import marijuana from Canada into Maine for re-sale. The operation was headed by Michael Pelletier, whose conviction we have affirmed. See United States v. Pelletier, No. 08-1167, slip op. (1st Cir. December 1, 2011). The gist of the scheme was that Pelletier paid associates to transport marijuana from Canada by swimming with the contraband across the St. John River near Madawaska, Maine. The marijuana was then distributed to various customers for their use or sale. Fogg was one of those customers.

---

[1]See 18 U.S.C. § 2, 21 U.S.C. § 841(a)(1) and 42 U.S.C. § 408(8)(4).

## II.  Evidentiary issues

During the course of Fogg's five-day trial, three witnesses testified that Pelletier made statements to them implicating Fogg in the conspiracy.  Pelletier also provided handwritten notes to one of the witnesses detailing Fogg's involvement.  The testimony and the handwritten notes were admitted without objection.  On appeal, Fogg claims that all of this evidence was inadmissible hearsay.

A.  Testimony of Kendra Cyr

Kendra Cyr[2] met Michael Pelletier in 2000 and the two began dating after Pelletier was released from jail in 2001.  She testified that Pelletier told her that Fogg was one of his customers.[3]  Cyr also testified that she collected money from Fogg on Pelletier's behalf while Pelletier was incarcerated.

Fogg argues that the trial court erroneously admitted Cyr's testimony under Federal Rule of Evidence 801(d)(2)(E), which provides that statements by coconspirators during the course of and in furtherance of a conspiracy are not hearsay.  He takes specific aim at the "in furtherance of" prong of the rule.  As there was no objection at trial, we review for plain error.  See United States v. Rodriguez, 525 F.3d 85, 100 (1st Cir. 2008) (employing plain

---

[2]Cyr testified pursuant to an immunity agreement.

[3]She referred to Fogg by his nickname, "Rocky," which the indictment lists as Fogg's alias.

error review where defendant did not seek a ruling at the close of the evidence regarding coconspirator statements) (citing United States v. Petroziello, 548 F.2d 20 (1st Cir. 1977)).[4] To succeed under this exacting standard, Fogg must demonstrate that the district court made an error that was clear or obvious, which affected the defendant's substantial rights and also seriously impaired the fairness, integrity, or public reputation of judicial proceedings. United States v. Mitchell, 596 F.3d 18, 25 (1st Cir. 2010).

Admission of a coconspirator statement requires that four elements be satisfied by a preponderance of the evidence: 1) a conspiracy must have existed; 2) the defendant must have been a member of it; 3) the declarant must also have been a member; and 4) the declarant's statement must have been in furtherance of the conspiracy. United States v. Colón-Díaz, 521 F.3d 29, 35-36 (1st Cir. 2008).

As previously noted, Fogg contests only whether Pelletier's statement to Cyr that Fogg was one of his drug customers "was in furtherance of the conspiracy." We have little trouble answering in the affirmative. A statement is in furtherance of a conspiracy if it "tends to advance the objects of

---

[4]Defense counsel raised the issue of Cyr's testimony with the court prior to trial. Such in limine consideration, however, does not serve to preserve the objection for appeal. See Walton v. Nalco Chem. Co., 272 F.3d 13, 24 n.17 (1st Cir. 2001).

the conspiracy as opposed to thwarting its purpose." Rodriguez, 525 F.3d at 101. Fogg asserts that rather than enhancing the object of the conspiracy, Pelletier's statements about Fogg's involvement was "mere idle chatter underlain by personal rather than conspiratorial motives." We disagree. Cyr admitted to having a role in the conspiracy in which she accompanied Pelletier on drug deliveries and also collected money for him while he was in jail. Without question, Pelletier's relaying to Cyr the identity of a customer who owed Pelletier money so that Cyr could collect it was in furtherance of the conspiracy. See United States v. Sepulveda, 15 F.3d 1161, 1180 (1st Cir. 1993) ("We think it is common ground -- and common sense -- that the reporting of significant events by one coconspirator to another advances the conspiracy."). We find no error, plain or otherwise, in the admission of Pelletier's statements to Cyr.

B.  Testimony of John Parker

John Parker testified that he met Michael Pelletier while both were incarcerated in a Maine county jail in 2004 and 2005. After casual conversations between the two led Parker to reveal that he was skilled in the martial arts, Pelletier offered him a job both "induc[ing] collections and sales" and swimming marijuana from Canada across the St. John River into Maine. Parker expressed interest in the job, and Pelletier, expecting Parker to be released first, provided him oral and written instructions regarding the

-5-

drug operation.  Pelletier also invited Parker to stay at his house while Parker was working for him, and provided him with handwritten maps and directions.

Pelletier's handwritten instructions consisted of pages dedicated to each of his customers, which Parker annotated with his own handwritten notes.  One page indicated that Fogg was a customer of Pelletier's, and included Pelletier's handwritten instructions on finding Fogg's home and the price Fogg would have to pay for marijuana that Parker delivered to him.  Parker testified that a second page with Fogg's name on it indicated that Fogg received five pounds of marijuana per purchase and that he owed Pelletier two debts of $25,000 and $12,000, respectively.

Fogg claims that neither Pelletier's statements to Parker nor the notes he provided to Parker were made during the conspiracy or were in furtherance of the conspiracy.  Once again, however, we discern no error in the admission of this evidence.  Fogg first argues that the conspiracy ended with Pelletier's November 2004 incarceration, which was before his exchange of information with Parker.  The record suggests otherwise.  Pelletier's arrest did not mandate a finding that the conspiracy had ended.  See United States v. Hudson, 970 F.2d 948, 958 (1st Cir. 1992) (finding that arrest of one coconspirator did not end defendant's involvement).  Moreover, as Cyr's testimony made clear, both drug delivery and money collection continued after Pelletier's arrest.  In addition,

Fogg himself testified that the meeting with Cyr to pay down drug debts took place in approximately September 2005, well after Pelletier's arrest. Finally, we observe that the indictment charges that the conspiracy continued "until a date unknown, but not earlier than March 31, 2006 . . . ." We thus conclude that Pelletier's oral and written statements to Parker were made during the course of the conspiracy.

We reach the same conclusion with respect to the statements' furtherance of the conspiracy. Where, as here, Parker testified that Pelletier wanted him to "take over everything for him," we are left with no doubt that the statements at issue were made to "advance the objects of the conspiracy." Rodriguez, 525 F.3d at 101. Accordingly, there was no error in the admission of Parker's testimony.

## C. Testimony of Adam Hafford

Adam Hafford was one of the swimmers who ferried marijuana into Maine from Canada on Michael Pelletier's behalf. While incarcerated in 2007, Hafford met Michael Easler, who had previously served in the same role under Pelletier. According to Hafford's testimony, while he and Easler discussed their common history, Easler told him that he had previously delivered marijuana to Fogg. Fogg claims on appeal that Hafford's testimony was

inadmissible hearsay.[5] Once again, there was no objection to this testimony at trial, so we review for plain error.

The government concedes that the jailhouse conversations between Hafford and Easler likely occurred after the conspiracy ended, and were not likely to further the conspiracy because Easler had already exhibited conduct consistent with thwarting the conspiracy when he stole money and drugs from Pelletier. Thus, the statements implicating Fogg would not be admissible under Federal Rule of Evidence 801(d)(2)(E).

Our inquiry does not end there, however. In Pelletier, we held that Easler's jailhouse statements to Hafford implicating Michael Pelletier in the conspiracy were admissible as an exception to the hearsay prohibition pertaining to statements against interest. Pelletier, slip op. at 12-15; see Fed. R. Evid. 804(b)(3). The same outcome obtains here. A statement is against the declarant's penal interest if it "tend[s] to subject the declarant to criminal liability to such an extent that a reasonable person would not make the statement unless it were true." United States v. Jiménez, 419 F.3d 34, 43 (1st Cir. 2005) (citing Williamson v. United States, 512 U.S. 594, 599 (1994)). In describing the delivery of marijuana to Fogg, Easler undoubtedly "inculpate[d] him[self] in criminal acts and conspiracies with

_____

[5]Hafford also testified about his own dealings with Fogg, as well as Pelletier's statements implicating Fogg. This testimony is not at issue on appeal.

-8-

others to commit criminal acts." United States v. Barone, 114 F.3d 1284, 1297 (1st Cir. 1997).  He also demonstrated "an insider's knowledge of a criminal enterprise and its criminal activities," which is another indication that the statements were against his penal interest.  Id.  Moreover, as we found in Pelletier, the fact that Easler was speaking to an inmate with whom he was acquainted, rather than a police officer, is a circumstance that corroborates the statements' trustworthiness, and thus their admissibility. Pelletier, slip op. at 14; Barone, 14 F.3d at 1301.  Accordingly, we conclude that there was no plain error in admitting Hafford's testimony.

### III.  Forfeiture

Shortly after the jury verdict, the district court granted the government's motion for a preliminary forfeiture order against Fogg in the amount of $264,000, approximating his share of the drug trafficking proceeds.[6]  The order was based on 21 U.S.C. § 853(a)(1), which provides that persons convicted of certain federal drug crimes "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation

---

[6]The government's proposed figure was based on a combination of the jury verdict, which found Fogg responsible for at least 50 kilograms (110 pounds) of marijuana, and evidence that it was sold at $2,400 per pound, for a total of $264,000.  Fogg did not object to the forfeiture, except so as to preserve the issue should his substantive drug conviction be reversed on appeal.

. . . ." See also Fed. R. Crim. P. 32.2(b)(2) ("If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment . . . .").[7]

In addition to forfeiture, the government, based on Fogg's conviction for Social Security fraud, also sought at sentencing restitution of approximately $40,000 -- the amount of benefits Fogg received during his participation in the conspiracy.[8] See 18 U.S.C. § 3663. The district court addressed this latter issue first and outlined Fogg's considerable debts, including child support arrearage of $110,000 and $30,000 in credit card and personal loan debts. Relying on the statutory mandate that the defendant's ability to pay be taken into consideration, see 18 U.S.C. § 3663(a)(1)(B)(i)(II), the district court declined to order restitution.[9] See also United States v. Theodore, 354 F.3d 1, 8-9

---

[7]In issuing the preliminary order, the district court agreed with the government that the term "proceeds" meant gross receipts, rather than net profits, an issue addressed after Fogg's indictment, but before his sentencing, by a divided Supreme Court in United States v. Santos, 553 U.S. 507 (2008). Fogg does not contest the district court's interpretation of Santos, so we leave it undisturbed. Nevertheless, we note that since Fogg's sentencing, we have held that it was not plain error to instruct a jury that "proceeds" meant "gross proceeds." United States v. Bucci, 582 F.3d 108, 124 (1st Cir. 2009).

[8]The fraud charge was based on the fact that Fogg did not report his income from drug dealing while receiving Social Security disability benefits due to a serious injury suffered years earlier.

[9]At certain points during the sentencing hearing, the district court appeared to conflate the restitution and forfeiture analyses,

(1st Cir. 2003) (noting requirement that defendant have ability to pay restitution).  The government has not appealed this portion of the district court's sentencing order.  We highlight it here only to provide context.

Next, without further analysis, the district court declined to issue a final order of forfeiture.

The district court sua sponte raised this Court's then recent decision in United States v. Levesque, 546 F.3d 78 (1st Cir. 2008), at the sentencing hearing on January 14, 2009.  We set the context.  The defendant did not at any point in the trial court object to the forfeiture order on Eighth Amendment grounds, nor did he at any time claim that imposition of the forfeiture amount would constitute a deprivation of his livelihood and amount to a constitutional violation.  The defendant did not at the hearing raise Levesque, an Eighth Amendment case decided on October 30, 2008, nor did he ask for a continuance based on Levesque, nor did he ask for an opportunity to brief Levesque.  Indeed, after consultation with the defendant, counsel expressly declined to continue the hearing.

---

seemingly applying Levesque's Eighth Amendment scrutiny to the restitution issue, even though Levesque itself concerned forfeiture, not restitution. On balance, however, the record amply demonstrates that the court ultimately -- and permissibly -- based its restitution order on the statutorily mandated consideration of Fogg's ability to pay.

-11-

The initial discussion at the hearing assumed that Levesque applied to restitution, the topic then under discussion. Levesque, by its terms, applies to forfeitures, not to restitution. The court, as stated, determined that no restitution would be ordered because defendant lacked the ability to pay. The prosecutor conceded this order was within the court's power under the statute.

As to forfeiture, the only argument advanced by the defendant was that he intended to appeal the drug convictions, and the forfeiture order was based on the convictions. The court suggested that it could delay the forfeiture decision "and if the government wants to make an argument that he does have financial resources, consistent with Levesque, it could do so." The prosecution responded that forfeiture should be decided at sentencing, but unfortunately provided no substantive argument as to whether Levesque applied to these facts. The court stated, "I don't see any evidence here that the defendant has the ability to pay either the forfeiture or the restitution and for that reason, I'm going to decline to issue a forfeiture and restitution."

The court cited Fogg's inability to pay and its concern that a forfeiture order in that circumstance would run afoul of the Excessive Fines Clause of the Eighth Amendment, which we had

addressed in Levesque.[10]   In support of its decision, the court noted that the government had not demonstrated that Fogg had financial resources to pay.  Although the district court's concern for punctilious adherence to Levesque was admirable, we conclude on de novo review, United States v. Reiner, 500 F.3d 10, 18 (1st Cir. 2007), that the court did not correctly apply Levesque and committed other errors. Among them were:  first, basing its forfeiture decision on Fogg's inability to pay; second, placing the burden on the government to prove that he could pay; and third, overlooking the fact that defendant had made no Eighth Amendment argument, no Levesque argument, and had presented no evidence that the forfeiture order would deprive him of his livelihood.

As noted, our decision in Levesque was issued only a few months prior to the sentencing in this case.  There, we reviewed an Eighth Amendment challenge to a forfeiture order exceeding $3 million entered against a "mule" in a marijuana distribution conspiracy.   546 F.3d at 79.   At the outset, we noted the unremarkable proposition that a criminal forfeiture violates the Excessive Fines Clause if it is "grossly disproportional to the gravity of the defendant's offense."  Id. at 83 (quoting United States v. Bajakajian, 524 U.S. 321, 337 (1998)); see also United States v. Jose, 499 F.3d 105, 111 (1st Cir. 2007); United States v.

---

[10]The Eighth Amendment prohibits "excessive bail," imposition of "excessive fines," and imposition of "cruel and unusual punishment."  U.S. Const. amend. VIII.

Heldeman, 402 F.3d 220, 223 (1st Cir. 2005). We also outlined the traditional factors that a court is to consider in performing the "grossly disproportional" analysis: 1) whether the defendant falls into the class of citizens targeted by the criminal statute; 2) other penalties authorized by the legislature or Sentencing Commission; and 3) the harm caused by the defendant. Levesque, 546 F.3d at 83 (citing Heldeman, 402 F.3d at 223). It is the defendant's burden to show unconstitutionality. Jose, 499 F.3d at 108.

After finding that the district court properly considered the Heldeman factors, we noted that our Excessive Fines inquiry runs deeper where a defendant raises the issue of deprivation of livelihood: "[A] court should also consider whether forfeiture would deprive the defendant of his or her livelihood." Levesque, 546 F.3d at 83, (citing Jose, 499 F.3d at 113) (emphasis added).[11] Because the district court did not consider this additional factor, we remanded Levesque for further consideration. Id. at 85.

---

[11]We first addressed this issue in Jose, where, after recounting the Supreme Court's Eighth Amendment disquisition in Bajakajian, we held that "it would be appropriate to consider" the potential deprivation of the defendant's livelihood. Jose, 499 F.3d at 113. As we observed in Levesque, the additional factor does not come explicitly from Bajakajian, 546 F.3d at 85, but is our gloss on the Court's comment that the defendant there "d[id] not argue . . . that full forfeiture would deprive him of his livelihood, and the District Court made no factual findings in this regard," Bajakajian, 524 U.S. at 340 n.15.

-14-

Apart from the error in considering a claim never made by defendant, the court misconstrued <u>Levesque</u>. Here, instead of hewing to the analytical framework drawn in <u>Heldeman</u>, the district court ostensibly proceeded directly to the "extra factor" delineated in <u>Jose</u> and <u>Levesque</u>. Moreover, although the court purported to apply <u>Levesque</u>, in doing so the court mistakenly inquired as to whether Fogg had the means to satisfy the judgment and never reached the actual inquiry under <u>Levesque</u> of whether Fogg's post-incarceration livelihood would be imperiled by the forfeiture.

This error was compounded by the court's requiring the government to shoulder the burden of proving that Fogg <u>could</u> pay a forfeiture judgment. <u>See also</u> <u>United States</u> v. <u>Katz</u>, No. 10-1138, 2010 WL 4627872 (1st Cir. Nov. 15, 2010) (finding no plain error in district court forfeiture order where defendant argued for the first time on appeal, without citing authority, that "excessiveness" may be established with reference to the financial burden created by the forfeiture order).

While we have not "define[d] the contours of this inquiry." <u>Levesque</u>, 546 F.3d at 85, it is enough to say, as we did in <u>Levesque</u>, that "a defendant's inability to satisfy a forfeiture at the time of conviction, in and of itself, is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." <u>Id.</u> at 85. Because a money judgment allows

the government to collect on the forfeiture order "in the same way that a successful plaintiff collects a money judgment from a civil defendant[,] . . . even if a defendant does not have sufficient funds to cover the forfeiture at the time of conviction, the government may seize future assets to satisfy the order."  Id.

### IV.  Conclusion

A forfeiture that is not "grossly disproportional to the gravity of the defendant's offense," Bajakajian, 524 U.S. at 337, violates the Eighth Amendment only if it is "so onerous as to deprive a defendant of his or her ability to earn a living," Levesque, 546 F.3d at 85.  While the record contains letters and other testimonials on Fogg's behalf attesting to his volunteer contributions in such wide-ranging pursuits as construction and snowmobile trail building and maintenance, there was no evidence that the forfeiture order would deprive Fogg of his livelihood.

Appellant's conviction is **affirmed**.  We **reverse** the district court's decision to decline to issue a final order of forfeiture and **remand** for entry of a final order of forfeiture consistent with this opinion.