**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                    )    BAP No.   CC-15-1081-KiTaKu
                                          )
ALETHEIA RESEARCH AND                     )    Adv. No.  14-01735
MANAGEMENT, INC.,                         )
                                          )    Bk. No.   2:12-47718-BR
                    Debtor.               )
                                          )
_____        )
                                          )
JEFFREY IAN GOLDEN, Chapter 7             )
Trustee,                                  )
                                          )
                    Appellant,            )
                                          )
v.                                        )    **M E M O R A N D U M**[1]
                                          )
CLAY LACY AVIATION, INC.,                 )
                                          )
                    Appellee.             )
_____        )

Argued and Submitted on November 19, 2015,
at Pasadena, California

Filed - December 10, 2015

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:    Aaron H. Stulman of Ashby & Geddes, P.A. argued for
                appellant Jeffrey Ian Golden, Chapter 7 Trustee;
                Amy L. Goldman of Lewis Brisbois Bisgaard & Smith
                LLP argued for appellee Clay Lacy Aviation, Inc.

Before:   KIRSCHER, TAYLOR and KURTZ, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

Chapter 7[2] trustee Jeffrey I. Golden appeals an order dismissing his complaint against Clay Lacy Aviation, Inc., which sought to avoid and recover from Clay Lacy certain constructive fraudulent transfers under § 544(b), 548(a)(1)(B) and Cal. Civ. Code § 3439. For several years prior to the petition date, Clay Lacy provided private flight-related services to the debtor, Aletheia Research and Management, Inc. and its management and/or employees. Trustee had alleged that insolvent Aletheia did not receive reasonably equivalent value, or any value, in exchange for flights that he alleged were of a personal nature, benefitting only Aletheia's corporate officers, non-employees and family members of Aletheia's principals. The bankruptcy court determined, however, that Aletheia got exactly what it bargained for — a chartered plane to fly persons from point A to point B, regardless of who received the benefit of the flight. Further, Trustee had not alleged that the fees charged by Clay Lacy were something other than fair market value. As such, the court concluded Aletheia had not received less than reasonably equivalent value from Clay Lacy and that Trustee's complaint failed. We VACATE and REMAND.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Aletheia, a California corporation, was founded in 1997. One of its founders, Peter J. Eichler, Jr., served as Aletheia's chief executive officer. Aletheia filed a chapter 11 bankruptcy case on November 11, 2012. Thereafter, Trustee served as the

---

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

chapter 11 trustee, closed the business, and the case was converted to chapter 7.

## A.    Trustee's complaint

Trustee later filed an avoidance action against Clay Lacy and Christy Eichler a/k/a Mavis Christine Lessley, the wife of Mr. Eichler.[3]  He alleged that Clay Lacy had provided flight services to management, "ostensibly for purposes related to Aletheia and/or in furtherance of Aletheia's business operations." During the four years prior to the petition date, Aletheia paid to Clay Lacy no less than $5,262,355.50 for flight-related services (the "Transfers").  However, alleged Trustee, the Transfers paid for flights for personal use by employees or members of management and their family and friends and served no business purpose of Aletheia.  Many of these flights paid for by Aletheia did not have a single Aletheia employee on board.  For example, Clay Lacy received $267,198 to charter a flight to Europe for two weeks in connection with the Eichlers' son's graduation.  The flight included the Eichlers and their five children.  Trustee alleged this flight neither served a business purpose nor conferred any benefit to Aletheia.

Within Trustee's complaint were detailed examples of other flights he contended were for personal use and not for the benefit of Aletheia, including multiple trips to the Eichlers' Lake Tahoe

---

[3]  Mrs. Eichler, who apparently was never an Aletheia employee, was served with Trustee's complaint on January 12, 2015. Mrs. Eichler failed to file any timely response.  On Trustee's request, the clerk entered Mrs. Eichler's default on March 19, 2015, after this appeal had been filed.  One day prior, on March 18, 2015, Mrs. Eichler filed a voluntary chapter 7 bankruptcy case.  As a result, Trustee's avoidance action against her has been stayed.

vacation home, ski trips to Salt Lake City, and Eichler family vacations to Hawaii. Obtaining the information from flight manifests, Trustee's complaint included the date of each flight in question, the name of each person on the flight, the flight destination and the fee paid to Clay Lacy. A detailed list of each flight and the amount paid to Clay Lacy was also attached to the complaint, including one flight that alone cost over $500,000.

Trustee further alleged that Aletheia was insolvent at the time the Transfers were made to Clay Lacy. He argued that no reasonable person would conclude any of the listed flights were for a legitimate business purpose of Aletheia and, thus, the Transfers made on account of these flights were not received by Clay Lacy in good faith. In closing, Trustee reserved the right to amend his complaint.

**B. Clay Lacy's motion to dismiss, Trustee's opposition and Clay Lacy's reply**

**1. Clay Lacy's motion to dismiss**

Clay Lacy moved to dismiss Trustee's complaint under Civil Rule 12(b)(6)("Motion to Dismiss"). In short, Clay Lacy argued that Trustee's complaint asserted conclusory statements and failed to provide any specificity or ultimate fact.

Clay Lacy argued that Trustee's claims for avoidance of constructive fraudulent transfers should be dismissed for two reasons. First, the complaint failed to show a lack of reasonably equivalent value received by Aletheia. Trustee had not presented any comparison of the value of the Transfers in relation to the value Aletheia received. For example, Trustee failed to allege any other carrier or provider like Clay Lacy could have provided

-4-

similar services for less cost. Instead, argued Clay Lacy, Trustee erroneously focused on the identity of each flight passenger and his or her purported relationship to Aletheia to summarily conclude that no business purpose or benefit was provided to Aletheia as a result of these flights. Clay Lacy argued that even if it was aware of the names of each passenger to whom it provided services, it did not have any legal duty to inquire as to why a particular passenger was on a given flight or to ascertain or question the purpose of each passenger's flight plan. Clay Lacy argued that it provided the appropriate services if and when requested by Aletheia — i.e., a fueled plane to fly to a specific location at a specific time and date with flight attendants and requested food and beverage items — in exchange for reasonably equivalent value — i.e., payment for such services.

Second, Clay Lacy argued that Trustee's complaint failed to provide any facts to support his unsubstantiated conclusion that Aletheia was insolvent at the time of the Transfers. The complaint merely stated "at the time that Aletheia made each of the alleged transfers to Clay Lacy, Aletheia was insolvent." This conclusory allegation of insolvency, argued Clay Lacy, failed to meet the pleading standard in Twombly.[4]

**2. Trustee's opposition**

Trustee contended that his complaint met the Twombly standard and sufficiently alleged that while Aletheia was insolvent, it made at least 126 transfers totaling no less than $5,262,355.50 to Clay Lacy for which Aletheia did not receive reasonably equivalent

[4] Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007).

-5-

value, or any value, in return. Trustee reiterated that during the fraudulent transfer period, Aletheia chartered at least 21 flights purportedly for the benefit of Aletheia amounting to no less than $355,949.35 for which no Aletheia employee was even present. Trustee argued that no value was received for these flights. An additional 41 flights all purportedly undertaken for Aletheia's benefit that cost Aletheia no less than $1,512.150.53 were personal in nature for the Eichler family and their friends, such as vacation trips to Lake Tahoe, Hawaii and Europe. Trustee argued that Aletheia received little to no value on account of those flights.

As for Clay Lacy's contention that the complaint failed to plead facts alleging lack of reasonably equivalent value, Trustee argued that "reasonably equivalent value" focuses on what the debtor surrendered and what the debtor received, not what the creditor gave. Trustee contended that his complaint had met this standard by alleging that Aletheia paid Clay Lacy certain sums of money for which it received little or no value in return. Trustee further disputed Clay Lacy's contention that his complaint failed to present any comparison of the value of the alleged Transfers in relation to the value Aletheia received. In fact, he had alleged that Aletheia received no value in return for the amount paid to Clay Lacy where no employee was on board and no business purpose existed. Thus, the comparison of value was self-evident. Moreover, argued Trustee, his complaint focused on the identity of each flight passenger because if no employees were on board (e.g., Mrs. Eichler and her four friends flying to Salt Lake City at an expense to Aletheia of $16,798.01), then no Aletheia business

-6-

could have been conducted and Aletheia received no value in return for the payments it made to Clay Lacy.

Finally, Trustee argued that he did not need to plead insolvency with particularity. Rather, insolvency could be pleaded generally and still be sufficient to survive a motion to dismiss. Trustee contended that his allegation of Aletheia's insolvency had to be considered in a light most favorable to him and assumed to be true for purposes of Clay Lacy's motion. Any question regarding Aletheia's insolvency would be further developed in discovery, on summary disposition or at a trial on the merits. Alternatively, Trustee requested leave to amend his complaint to address any possible deficiencies.

### 3. Clay Lacy's reply

In reply, Clay Lacy argued that while Trustee's complaint alleged facts about flights he contended were personal in nature and of no benefit to Aletheia and it recited the statutory elements of a constructive fraudulent transfer under the Code and California law, nothing sufficiently connected the description of the flights and passengers to the allegations of constructive fraudulent transfer against Clay Lacy. Clay Lacy argued that Trustee's complaint either missed or was trying to avoid the simple facts that: (1) Aletheia requested flights and other related services; (2) Clay Lacy provided the services Aletheia requested; and (3) Aletheia paid Clay Lacy for the services provided. Whether or not the passengers were Aletheia employees and whether or not the paid flights were to serve a specific business purpose, argued Clay Lacy, was inapposite to the analysis of a constructive fraudulent transfer claim. Clay Lacy contended

-7-

that if "reasonably equivalent value" was defined by the ultimate purpose of the service, such a standard would hinder service providers from engaging in business with debtors such as Aletheia.

As for insolvency, Clay Lacy reiterated that Trustee's complaint merely parroted the statutory elements of § 548(a)(1)(B) and failed to allege any facts regarding Aletheia's financial condition at the time of the Transfers, such as a reference to a balance sheet or a description of the obligations Aletheia owed as compared to the working capital Aletheia had at that time.

**C.    The bankruptcy court's ruling to dismiss Trustee's complaint**

At the start of the hearing on Clay Lacy's Motion to Dismiss, the bankruptcy court noted it was not clear from Trustee's complaint whether Aletheia or some individual not representing Aletheia hired Clay Lacy for each of the flights in question. Counsel for Trustee responded that it appeared Aletheia had hired Clay Lacy each time, but they were still investigating whether certain executive employees may have made the call on behalf of Aletheia. Counsel conceded that such employees would have had the authority to arrange the flights.

The bankruptcy court then made its ruling from the bench, granting Clay Lacy's Motion to Dismiss:

> Okay. Well, let me tell you this. This is going to be a very short hearing; I think you can see where I'm going. When I read this I said this can't possibly be the law. Maybe, sometimes it is. But this case, it's quite clear that the debtor got what it bargained for.
> . . . .
>
> There's not going to be a debate. It is so clear to me that you got it wrong; just the whole theory of this is wrong. . . . There are two things going on here. The debtor got what it bargained for. As they pointed out, there is no – your theory is that it's . . . a fraudulent transfer because . . . there was no good purpose for it

-8-

and so forth. I really do understand it but I just don't buy it for a second.

What actually happened here is in any commercial activity, like, for example, with renting a car or renting a house . . . . The debtor got what it bargained for. It got a plane. Period. And as they point out, there's no evidence that this was a higher price for the normal planes. . . .

What you're saying is well, because the use of the plane didn't benefit the debtor, therefore, it's a fraudulent transfer. I just don't buy that for a second.

If indeed, for instance – and I'm not ruling on it . . . because it's not before me, but as [Mrs. Eichler] is concerned, if the debtor then gave away, in this case, free transportation to her at a certain value then that might very well be. I'm not saying it is but that, at least, as far as . . . any of these other people that got a free ride . . . yes, that could very easily be a fraudulent transfer. But the transfer there would be from the debtor giving the actual seats on the plane[.] That could easily be a fraudulent transfer because the debtor got no benefit on that. But here, the debtor got what it bargained for. It got a plane, a chartered plane. Period.

So . . . there is no fraudulent transfer here. . . .

Hr'g Tr. (Feb. 11, 2015) 8:19-23, 9:7-21, 10:1-20. The court did not discuss whether Trustee would be given leave to amend.

The order granting Clay Lacy's Motion to Dismiss and dismissing Trustee's complaint was entered on February 24, 2015. The order, drafted by counsel for Clay Lacy, failed to articulate or incorporate any of the bankruptcy court's findings. It was also silent as to whether the complaint was dismissed with or without prejudice. Trustee timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(H). We initially determined the order on appeal was interlocutory. After briefing by the parties, the Panel agreed to consider Trustee's notice of appeal as a motion for leave to

-9-

appeal and granted leave to appeal. See Rule 8004(d). Accordingly, we have jurisdiction under 28 U.S.C. § 158.

### III. ISSUES

1. Did the bankruptcy court err when it granted Clay Lacy's Motion to Dismiss?

2. Did the bankruptcy court abuse its discretion when it dismissed Trustee's complaint without leave to amend?

### IV. STANDARDS OF REVIEW

We review de novo the bankruptcy court's order dismissing a complaint under Civil Rule 12(b)(6). Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012); Tracht Gut, LLC v. Cty. of L.A. (In re Tracht Gut, LLC), 503 B.R. 804, 810 (9th Cir. BAP 2014). A dismissal without leave to amend and with prejudice is reviewed for an abuse of discretion. Id. A bankruptcy court abuses its discretion by denying leave to amend unless amendment would be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated opportunities. Hernandez, 666 F.3d at 636. A bankruptcy court also abuses its discretion when it commits an error of law. Id.

### V. DISCUSSION

**A. Standard for dismissal under Civil Rule 12(b)(6)**

Under Rule 7012, incorporating Civil Rule 12(b)(6), a defendant may move to dismiss a complaint if it fails to "state a claim upon which relief can be granted." Under Rule 7008, incorporating Civil Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is

-10-

entitled to relief."[5] Civil Rule 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Twombly, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of "further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'"

_____

[5] Neither party has contended that the heightened pleading standard of Civil Rule 9(b) applies to constructive fraud claims. We agree it does not apply. See Cendant Corp. v. Shelton, 474 F. Supp.2d 377, 380 (D. Conn. 2007)(Civil Rule 9(b) applies only to actual, not constructive, fraud claims); Charys Liquidating Trust v. McMahan Sec. Co. (In re Charys Holding Co.), 443 B.R. 628, 632 n.2 (Bankr. D. Del. 2010)(constructive fraudulent transfer claims are governed by Civil Rule 8, not the heightened Civil Rule 9(b) pleading standard); Angell v. Ber Care, Inc. (In re Caremerica, Inc.), 409 B.R. 737, 755-56 (Bankr. E.D.N.C. 2009)(Civil Rule 9(b) is inapplicable to constructive fraud claims because such claims are not based on actual fraud but instead rely on the debtor's financial condition and the sufficiency of consideration paid by the transferee)(citing cases).

-11-

Id. (quoting Twombly, 550 U.S. at 557). Although a court must accept as true all factual allegations contained in a complaint, a court need not accept plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555). A dismissal under Civil Rule 12(b)(6) may be based on either the lack of cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008).

**B.  Governing law:  §§ 544, 548 and CAL. CIV. CODE § 3439**

A bankruptcy trustee can avoid constructive fraudulent transfers under state law and the Code. Section 544(b) allows the trustee to avoid any transfers of a debtor's property which would be avoidable by an unsecured creditor under state law. Section 548 provides a federal statutory basis for avoiding fraudulent transfers. Wyle v. C.H. Rider & Family (In re United Energy Corp.), 944 F.2d 589, 593 (9th Cir. 1991). Trustee sought to avoid the Transfers to Clay Lacy under both §§ 544(b) and 548(a)(1)(B).

Under § 548(a)(1)(B), a trustee may avoid any transfer of an interest of the debtor in property that was made within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such transfer, and was insolvent on the date that such transfer was made or became insolvent as a result of such transfer. § 548(a)(1)(B)(i), (ii)(I). The applicable state law for Trustee's claim under § 544(b) is

-12-

California law, namely CAL. CIV. CODE §§ 3439.04(a)(2) and 3439.05.[6] These state statutes are essentially identical to § 548(a)(1)(B), except the limitations period for avoidance is longer — the later of 4 years after the transfer or 1 year after the date of reasonable discovery. See CAL. CIV. CODE § 3439.09(a).

Both state and federal law allow a transfer to be avoided where "the debtor did not receive a reasonably equivalent value in exchange for the transfer and the debtor was either insolvent at the time of the transfer or was engaged in business with unreasonably small capital." In re United Energy Corp., 944 F.2d at 594 (citation and internal quotation marks omitted). Because California law is similar in form and substance to the Code's fraudulent transfer provisions, they may be interpreted contemporaneously. Id.

Applying Twombly to the present case, a complaint seeking relief under §§ 544(b) and 548(a)(1)(B)(i) and (ii)(I) must contain sufficient facts plausible on their face that establish the debtor: (1) made a transfer of the debtor's property; (2) within 2 or 4 years of the petition date; (3) received less than a reasonably equivalent value in exchange for the transfer;

---

[6] Under California law, constructive fraud may be found as to any present or future creditor when a debtor does not receive a reasonably equivalent value in exchange for the transfer, and either: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; (B) intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due. CAL. CIV. CODE § 3439.04(a)(2). Similarly, constructive fraud can be found under CAL. CIV. CODE § 3439.05 "as to an existing creditor if the debtor does not receive reasonably equivalent value and 'was insolvent at that time or . . . became insolvent as a result of the transfer." Mejia v. Reed, 31 Cal. 4th 657, 670 (2003)(quoting CAL. CIV. CODE § 3439.05).

-13-

and (4) was insolvent on the date the transfer was made or became insolvent as a result of the transfer. In re United Energy Corp., 944 F.2d at 594 (stating elements of a claim under § 548).

Whether the Transfers were property of Aletheia and that they were made within 2 or 4 years of the petition date was not disputed. We agree these two elements were supported by the requisite factual allegations. The complaint identified the property transferred (i.e., Aletheia funds paid to Clay Lacy) and provided dates of the Transfers, which were all within 2 or 4 years of the petition date. The issue before us is whether Trustee sufficiently pleaded that Aletheia was insolvent at the time of the Transfers (or became insolvent as a result) and whether he sufficiently pleaded that Aletheia did not receive reasonably equivalent value in exchange for the Transfers.

**C.    The bankruptcy court erred when it granted Clay Lacy's Motion to Dismiss.**

**1.    The bankruptcy court applied an incorrect standard of law in ruling that Clay Lacy could not be a transferee.**

The bankruptcy court's ruling here is ambiguous, making our review somewhat difficult. It appears the court did two things. First, it seems to have ruled as a matter of law that Clay Lacy could never be a proper transferee because Aletheia "got what it bargained for." This ruling was in error.

We agree with Trustee that the bankruptcy court incorrectly determined that because Aletheia directly contracted with Clay Lacy, no fraudulent conveyance claim could be asserted, ruling that "if a principal of the debtor . . . incurs debts and then the debtor pays those debts; that's different. . . . But this is [Aletheia] who incurred the debt. So I'm going to . . . grant the

-14-

motion to dismiss." Hr'g Tr. (Feb. 11, 2015) 11:18-25. The general rule is that the party who receives a transfer of property directly from the debtor is the initial transferee. Incomnet, Inc. v. Universal Serv. Admin. Co. (In re Incomnet, Inc.), 299 B.R. 574, 578 (9th Cir. BAP 2003), aff'd, 463 F.3d 1064, 1073 (9th Cir. 2006). The fact that a corporate debtor directly incurred a debt to a service provider, such as Clay Lacy, is not an automatic bar to recovery for a fraudulent conveyance from the service provider transferee. See Burdick v. Lee, 256 B.R. 837 (D. Mass. 2001); Lawrence v. Bonadio, Insero & Co. (In re Interco Sys., Inc.), 202 B.R. 188 (Bankr. W.D.N.Y. 1996); Brandt v. Charter Airlines, LLC (In re Equip. Acquisition Res., Inc.), 511 B.R. 527 (Bankr. N.D. Ill. 2014), rev'd in part, 2015 WL 4764145 (N.D. Ill. 2015) (hereinafter "EAR").

EAR involved substantially similar facts. There, the corporate debtor, EAR, had contracted directly with the defendant, Charter Airlines, to provide flights for EAR's officers in exchange for payment. 511 B.R. at 530, 533. The flights were paid for by EAR. Id. The plaintiff plan administrator sought to avoid certain transfers to Charter Airlines for flights that he contended were taken by the debtor's officers "purely for personal pleasure, not as business trips taken on EAR's behalf," and that did not benefit EAR. Id. at 530, 535. No argument was raised that Charter Airlines charged more than fair market value for the flights. The primary focus was whether EAR received reasonably equivalent value for the chartered flights it contracted and paid for. Id. at 530, 534-35. In its defense, Charter Airlines offered an affidavit of the chief pilot and captain of every

-15-

flight, who asserted that the flights were for business purposes based on his belief that he was flying EAR's officers to business meetings and his observations of cell phone conversations of a business nature. Id. at 535. Ultimately, the bankruptcy court denied summary judgment to the plan administrator, holding that a factual issue remained for trial as to whether EAR received reasonably equivalent value. Id.[7]

A similar claim was at issue in Burdick. There, the corporate debtor had contracted with a charter flight service, Enterprises, for flights taken by one of its officers, Mr. Lee. 256 B.R. at 839. The chapter 7 trustee sought to avoid transfers to Enterprises for flights that he alleged benefitted only Mr. Lee. Id. A question for trial was whether the debtor received less than reasonably equivalent value for the flights taken by Mr. Lee and charged to the debtor via the defendant, Enterprises. Id. at 839-40. Enterprises ultimately prevailed. Mr. Lee testified that he used the plane for both business and personal travel, but that he paid with his own funds for any personal use. Therefore, the court held that it could not infer the corporate debtor received less than reasonably equivalent value for the expenses incurred for Mr. Lee's personal use of the plane. Id. at 840.

Finally, one of the issues in Interco Systems, Inc. was whether the corporate debtor received reasonably equivalent value

_____

[7] After discovery, the bankruptcy court granted summary judgment in favor of defendant Charter Airlines due to its good faith defense under § 548(c). Id. at 536. However, as we discuss below, the defense of "good faith" is fact-specific and should not be considered in the context of a motion to dismiss.

-16-

for payments it made to attorneys for legal services provided in connection with a sale of one of the debtor's company divisions. 202 B.R. at 191. In suing the attorneys for recovery of the fees, the chapter 7 trustee alleged that the legal services requested and paid for by the corporate debtor benefitted only the debtor's corporate officer. Id. at 192-93. Thus, reasonably equivalent value to the debtor was lacking. Ultimately, the trustee lost at trial. The bankruptcy court concluded that the corporate debtor, in its business judgment, believed that it received a financial benefit from the sale transaction. Id. at 194. The court went on to note:

> Certainly, if the facts and circumstances indicate that a payment of professional fees or other expenses by a corporation was for services or goods which solely benefitted a third party, whether it be a principal, officer or employee, and had no reasonable, good faith business judgment benefit to the corporation, that payment would be avoidable under Section 548 because of a lack of reasonably equivalent value, if all of the other requirements of that Section were met. In this case, the $150.00 paid by Interco for services rendered to Davie in connection with his matrimonial is such an improper and avoidable transfer. However, when in the exercise of reasonable, good faith business judgment, there is a perceived financial benefit to the corporation which justifies the fees or expenses paid, as in the case of the sale to UDI, unless the Trustee meets his or her burden to prove that there was in fact no benefit, or a substantially and reasonably quantifiable disproportionate financial benefit, the payment of professional fees or expenses to the professionals or others who perform the services or provided the goods at the request of the corporation and charged a reasonable rate is not avoidable as a fraudulent conveyance under Section 548(a)(2)(B)(I).

Id.

Regardless of the outcome, these cases have one important common denominator: the corporate debtor contracted and paid for a service that may not have benefitted the debtor, but rather may

-17-

have benefitted only the debtor's corporate officer or employee. In each case, the defendant service provider was the recipient of the transfer (i.e., money for services rendered), which was potentially avoidable because the corporate debtor may have received less than reasonably equivalent value in exchange. Such defendants, however, may offer an affirmative defense, as did some of the defendants discussed. However, resolution of such defenses is not proper in the context of a motion to dismiss under Civil Rule 12(b)(6). McFarland v. Gen. Elec. Capital Corp. (In re Int'l Mfg. Grp., Inc.), 538 B.R. 22, 33 (Bankr. E.D. Cal. 2015)(citing Picard v. Merkin (In re Bernard L. Madoff Inv. Sec.), 440 B.R. 243, 256 (Bankr. S.D.N.Y. 2010)). But see Asarco, LLC v. Union Pac. R.R. Co., 765 F.3d 999, 1004 (9th Cir. 2014)(dismissal under Civil Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint.)

Therefore, to the extent the bankruptcy court ruled as a matter of law that Clay Lacy could not be a transferee because Aletheia incurred the debt for flight services and got what it bargained for, we believe it erred.

**2. The bankruptcy court further erred in making a factual determination as to reasonably equivalent value.**

The bankruptcy court also appears to have found as a matter of fact that even if Clay Lacy could be a transferee, it undisputedly provided Aletheia with reasonably equivalent value for the Transfers because it provided Aletheia with the service it requested at a fair market price. Such findings are not appropriate in the context of a motion to dismiss under Civil

-18-

Rule 12(b)(6).

The question of whether or not reasonably equivalent value was provided in exchange for a transfer is clearly a question of fact. Nordberg v. Arab Banking Corp. (In re Chase & Sanborn Corp.), 904 F.3d 588, 593 (11th Cir. 1990); Jacoway v. Anderson (In re Ozark Rest. Equip. Co.), 850 F.2d 342, 344 (8th Cir. 1988); Samson v. W. Capital Partners LLC (In re Blixeth), 2012 WL 1981719, at *15 (Bankr. D. Mont. June 1, 2012); Salven v. Munday (In re Kemmer), 265 B.R. 224, 232 (Bankr. E.D. Cal. 2001). See also Decker v. Tramiel (In re JTS Corp.), 617 F.3d 1102, 1109-10 (9th Cir. 2010)(holding that bankruptcy court's finding as to reasonably equivalent value was not "clearly erroneous"). The primary focus is on the net effect of the transaction on the debtor's estate and funds available to the unsecured creditors. Frontier Bank v. Brown (In re N. Merch., Inc.), 371 F.3d 1056, 1059 (9th Cir. 2004); Maddox v. Robertson (In re Prejean), 994 F.2d 706, 708-09 (9th Cir. 1993)(reasonably equivalent value under California UFTA is "determined from the standpoint of the creditors"). See also In re United Energy Corp., 944 F.2d at 597 ("[T]he analysis is directed at what the debtor surrendered and what the debtor received irrespective of what any third party may have gained or lost.").

In reviewing the complaint, Trustee alleged that in exchange for the Transfers, Aletheia received little or no value for flights where (1) employees took the flight for personal purposes or (2) no Aletheia employees were even on board. He provided a comprehensive list of the flights in question, including the dates, names of each passenger on the flight, the flight's

-19-

destination and the price paid to Clay Lacy. Viewing the complaint in a light most favorable to Trustee, we conclude he stated sufficient facts to show Aletheia may not have received reasonably equivalent value from Clay Lacy for the Transfers.

**3. Trustee failed to plead sufficient facts to establish a plausible claim for insolvency.**

The bankruptcy court did not rule on Trustee's allegation of Aletheia's insolvency. However, our review is de novo, and we conclude Trustee's complaint fell short on the matter.

For this required element under both state and federal law, Trustee alleged generally that at the time Aletheia made each of the alleged Transfers to Clay Lacy, "Aletheia was insolvent." Trustee's complaint failed to set forth any factual support for this conclusion that would demonstrate plausibility. He did not offer a **single** fact to show that Aletheia was insolvent at the time of the Transfers or became insolvent as a result. This threadbare allegation does not pass muster under Twombly. 550 U.S. at 555 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Notably, some of the alleged Transfers reach back as far as four years before Aletheia filed its bankruptcy case; thus, plausibility for those transfers is highly questionable without more supportive facts from Trustee. However, he will have another opportunity to plead his claim.

**D. The bankruptcy court abused its discretion when it dismissed Trustee's complaint without leave to amend.**

Trustee contends the bankruptcy court abused its discretion by not granting his request for leave to amend. The court did not

discuss amendment at the hearing. In addition, the order dismissing Trustee's complaint fails to state whether it was dismissed with or without prejudice. However, because the court believed that Trustee could never plead a fraudulent conveyance claim against Clay Lacy, we can only presume it believed any amendment would be futile and that dismissal was with prejudice. Due to the errors committed by the court discussed above, we agree with Trustee.

Under Rule 7015, incorporating Civil Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." If a Civil Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000)(en banc)(internal quotation marks and citation omitted). In other words, dismissal is proper if any potential amendment of the complaint would be futile. Although Trustee failed to plead sufficient facts to show insolvency, we do not conclude that amending his complaint would be futile.

## VI. CONCLUSION

Accordingly, we VACATE and REMAND to the bankruptcy court with instruction that Trustee be allowed to amend his complaint.

-21-